IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LOCAL 22 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 22 AND NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION HEALTH AND WELFARE TRUST FUND, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 22 PENSION FUNDS A & B, OMAHA BROTHERHOOD OF ELECTRICAL WORKERS LOCAL NO. 22 VACATION-HOLIDAY TRUST FUND, OMAHA ELECTRICAL JOINT APPRENTICESHIP AND TRAINING TRUST FUND, IBEW LOCAL 22/NEBRASKA NECA LABOR MANAGEMENT COOPERATION COMMITTEE, NATIONAL ELECTRICAL BENEFIT FUND, NATIONAL LABOR-MANAGEMENT COOPERATION FUND, TRUSTEES OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 22/N.E.C.A. HEALTH AND WELFARE TRUST FUND, TRUSTEES OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 22 PENSION FUNDS A & B, TRUSTEES OF THE OMAHA BROTHERHOOD OF ELECTRICAL WORKERS LOCAL NO. 22 VACATION-HOLIDAY TRUST FUND, TRUSTEES OF THE OMAHA ELECTRICAL JOINT APPRENTICESHIP AND TRAINING TRUST FUND, and TRUSTEES OF THE NATIONAL ELECTRICAL BENEFIT FUND,<br><br>                    Plaintiffs,<br><br>v.<br><br>SADLER ELECTRIC, INC.,<br><br>                    Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | CASE NO.  8:05CV523<br><br><br><br><br><br><br><br><br><br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Plaintiffs' Motion for Summary Judgment (Filing No. 28). Plaintiffs[1] seek to recover from Defendant Sadler Electric Company ("Sadler Electric") unpaid contributions and dues to employee benefit funds, and related damages, including liquidated damages, interest, attorney fees, and expenses incurred in the preparation of an audit report that they are entitled to pursuant to the Employee Retirement Income Security Act, (hereafter "ERISA"), 29 U.S.C. §§ 1132 and 1145, and/or pursuant to the Labor Management Relations Act, (hereafter "LMRA"), 29 U.S.C. §§ 185 and 301. The issues have been fully briefed, and I have considered the evidence offered in support of and in opposition to the motion. (Filing Nos. 29, 30, 34-37).

Sadler Electric does not dispute the material facts as set forth in the Plaintiffs' brief. (Filing No. 34, Defendant's Brief in Opposition to Plaintiffs' Motion for Summary Judgment, p. 1). However, Sadler Electric does contest the legal conclusion that the Plaintiffs would have the Court draw from the undisputed facts. Specifically, Sadler Electric argues that it is not required by law or by contract to reimburse Plaintiffs for expenses related to the audit of Sadler Electric's payroll records, as is asserted in paragraphs 30, 31, and 37 of the Plaintiffs' Statement of Material Facts. (*Id.*)

## Standard of Review

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and the

---

[1] The Plaintiffs are identified in the caption and are individually described in the Complaint (Filing No. 1 ¶¶ 2-14), and they include labor unions, employee benefit plans and multi-employer plans, labor-management cooperation committees, and fiduciaries that are associated with the electrical trade. For simplicity and readability, they will be referred to throughout as "Plaintiffs."

moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c);  *Cordry v. Vanderbilt Mortg. & Finance, Inc.,* 445 F.3d 1106, 1109 (8th Cir. 2006*) (quoting Bockelman v. MCI Worldcom, Inc.,* 403 F.3d 528, 531 (8th Cir. 2005))*.*  The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  *See also Trustees of Graphic Commc'n Intern. Union Local 1B Health and Welfare Fund ""A" v. Tension Envelope Corp.,* 374 F.3d 633, 635 (8th Cir. 2004).

**Analysis**

Based upon the undisputed facts and the Court's review of the record, I conclude that the Court has jurisdiction of the subject matter and of the parties, and that venue is proper in this district. (Filing No. 29, Plaintiffs' Statement of Material Facts ¶¶ 1-10; Filing No. 34 at 1).

Plaintiffs' claims are brought under ERISA and the LMRA.  The controlling provision of ERISA states:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contribution in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. This provision creates a federal right of action independent of the contract on which the employer's duty to contribute is based. *Central States, Se. & Sw. Areas Pension Fund v. Independent Fruit & Produce Co.,* 919 F.2d 1343, 1347 -1348 (8th Cir. 1990). "Congress intended that this section would simplify actions to collect delinquent contributions, avoid costly litigation, and enhance the actuarial planning necessary to the administration of multiemployer pension plans." *Id.* A court may award a plaintiff who prevails under § 1145 a reasonable attorney fee and "costs of the action." 29 U.S.C. § 1132(g)(2)(D).

There is no dispute Sadler Electric was required to make, and in part failed to make, contributions to the Plaintiff employee benefit and multi-employer funds (hereafter the "Funds")[2] that are administered through Plaintiff IBEW Local No. 22 (the "Local"). The contributions were to be determined based on the hours worked by Sadler Electric's employees who were covered by the applicable collective bargaining agreement. Sadler Electric does not dispute that the amount of delinquent contributions that it owes to the Funds is $9,229.20, representing delinquent contributions during the months of January 2001, July 2002, and November 2002. (Filing No. 30, Ex. 1, Ronald Miller Affidavit; and Ex.

---

[2] The Funds include the International Brotherhood of Electrical Workers Local Union No. 22/NECA Health and Welfare Trust Fund, the International Brotherhood of Electrical Workers Local Union No. 22 Pension Funds A&B, and the Omaha Brotherhood of Electrical Workers Local No. 22 Vacation-Holiday Trust Fund. (Miller Aff. ¶ 1). Others include the National Electric Benefit Fund and the Electrical Joint Apprentice Training Trust Fund.

6 Eugene C. DeBoer Affidavit; Filing No. 34; Filing No. 35, Robert Sadler Aff. ¶ 6). I observe that in Robert Sadler's deposition, he took the position that he had overpaid at least one of the Funds in the amount of $10,000, but that position apparently has been abandoned as it is not briefed. (Filing No. 30, Ex. 14, Robert Sadler Dep. 56:8-22). Moreover, Sadler Electric does not dispute that the Plaintiffs are entitled to liquidated damages in the amount of $1,008.92, and interest through August 14, 2006 in the amount of $2,722.67. (*Id.;* Filing No. 30, Ex. 2, Collective Bargaining Agreement "CBA" at Sec. 9.08).

Based on these undisputed facts, the Court concludes that the Plaintiffs are entitled to summary judgment on their claim for damages in the amount of $9,229.20, representing the contributions to the employee benefit and multi-employer funds that Sadler Electric was required to make, and did not make, based on the hours worked by its employees who were covered by the applicable collective bargaining agreements. In addition, I conclude that the Plaintiffs are entitled to liquidated damages in the amount of $1,008.92, and interest through August 14, 2006, in the amount of $2,722.67.

The remaining issue is straightforward. Are the audit expenses Plaintiffs incurred in identifying Sadler Electric's delinquent contributions recoverable under ERISA or under the CBA? The audit was authorized by the Funds' Trustees and, at the insistence of Sadler, was conducted by a certified public accountant, Eugene C. DeBoer, according to the terms of the Health and Welfare Fund agreement. (*See* Filing No. 30, Ex. 14, Robert Sadler Dep. 52:20-53:2; Ex. 3 Health and Welfare Trust Fund at 0056-57).

The Plaintiffs contend that the audit expenses were necessary to the collection of the delinquency, and therefore, the audit expense may be awarded as a "cost of the action"

pursuant to §1132(g)(2)(D). They argue that the Eighth Circuit Court has awarded audit expenses under similar circumstances. Sadler argues that the Eighth Circuit Court has only awarded audit expenses as costs when the audit was court-ordered, distinguishing this case from the precedent.

The Eighth Circuit Court of Appeals has addressed a plaintiff's right to recover audit expenses in *Contractors, Laborers, Teamsters and Engineers Health and Welfare Plan v. Hroch*, 757 F.2d 184, 189-90 (8th Cir. 1985). In that case, the Eighth Circuit Court found that a union and various welfare trusts proved that the employer was in default on payments to the trust, and the court held that the trust plaintiffs in that case were entitled to an award of the "reasonable costs of collecting the delinquent contributions, including attorneys' fees and the costs of the independent audit." *Id.* The Court ordered the independent audit. However, the Court also concluded that the plaintiff union had to "bear the cost of the one-day "audit" which the union secretary conducted of the employer's books because the audit was of little use in resolving the issues before the court, and because the Company must pay for the complete audit by an independent certified public accountant on remand." *Id.*

In reaching its conclusion, the *Hroch* Court did not rely on the plaintiffs' argument that the company must pay all costs and fees pursuant to ERISA's §§ 1132(g)(2), though it opined that "it is likely that fees and costs are due under these sections." Instead, the Court decided the issue based on "all of the applicable trust agreements [which] provide that an employer shall pay all costs incurred in collecting delinquent payments," and it construed that phrase to in include the "costs for the necessary audit by an independent

6

certified public accountant." *Id.* n. 7.  Because the employer had to bear the cost of the court-ordered audit, but the plaintiff union had to pay the costs of the one-day audit, I do not find *Hroch* dispositive of the issue presented in this case.  Like the *Hroch* Court, I need not decide the ERISA question,[3] because I find that the parties' agreements unambiguously resolve the issue.

Section 301 of the LMRA authorizes actions based on the violation of a contract between an employer and a labor organization representing employees engaged in an industry affecting commerce.  29 U.S.C. § 185(a).  The collective bargaining agreement ("CBA") between Sadler Electric and the Local is such a contract.   (Filing No. 30, Ex. No. 2 hereafter ("CBA")). The parties' agree that the CBA incorporates the terms of the Fund agreements into the CBA.  (Complaint at ¶21; Answer at ¶ 4; and *see, e.g.*, Filing No. 30, wherein Sadler Electric agrees to "be bound by" the terms of the Employee Benefit Agreement of the National Electrical Benefit Fund as delineated in the Restated Employees Benefit Agreement and Trust (Sec. 4.10); the Local Joint Apprenticeship and Training Trust Fund Agreement (Sec. 5.15)).

---

[3] There is a split among the United States Circuit Courts of Appeal on whether "routine" audit expenses are recoverable as "costs of the action" under ERISA, 1132(g) with at least one court holding that routine audit expenses are recoverable as the necessary first step in the collection of any delinquency, and another court holding that routine audit expenses incurred prior to and independent of any collection effort cannot be costs of collection.  *Compare Carpenters Amended and Restated Health Benefit Fund v. John W. Ryan Construction Co., Inc.,* 767 F.2d 1170, 1175-76 (5th Cir. 1985) *with Bd. of Trs. of the Hotel and Rest. Employees Local 25 v. JPR, Inc.,* 136 F. 3d 794, 799 (D.C. Cir. 1998) and *Flynn v. Angelucci Bros & Sons, Inc.*, 2006 WL 2597894, n.1 (D. D.C.)  If the resolution of the issue turned on whether the DeBoer audit could fairly be characterized as "routine," the Plaintiffs' motion would likely be denied based on the existence of a genuine issue of material fact.  There is no dispute that the DeBoer audit was conducted before litigation commenced, which might characterize it as "routine" but it is also true that the Plaintiffs were able to identify and value Sadler Electric's deficient contributions.

Sadler Electric argues that the CBA that Robert Sadler executed does not contemplate shifting the cost of an audit to the employer except when the employer's deficient contributions exceed ten percent of the total contributions the employer is responsible for paying during the audit period.  In making this argument, Sadler Electric does not cite to language from the CBA, but rather, it relies on the language contained in the Heath and Welfare Trust Fund agreement that is incorporated into the CBA and to which Robert Sadler admits Sadler Electric is bound.  *(See* Filing No. 30, Ex. 3 and 4 and Ex. 14, Robert Sadler Dep. 28:19-29:4).   Sadler Electric's deficient contributions, as identified by the DeBoer audit, are $9,229.20.  Sadler Electric argues that because the amount of the deficiency is less than one percent of Sadler Electric's total contributions of $1,412,620.40 for the audit period from January 1, 2000, through May 31, 2004, Sadler Electric is not responsible for the audit fees under the Health and Welfare Trust Fund agreement.  (Filing No. 35, Robert Sadler Aff. at ¶ 6).

I conclude that Sadler Electric's argument must fail because this Court must give effect to the plain language of the entire applicable provision of the Health and Welfare Trust Fund agreement.  *See Operating Engineers Local 571 v. Hawkins Construction Co.*, 929 F. 2d 1346, 1349 (8th Cir. 1991)(stating an "agreement's terms . . . 'must be construed so as to render none nugatory,' quoting *Local 134, UAW v. Yard-Man, Inc.*, 716 F.2d 1476, 1480 (6th Cir.1983)).  The relevant Health and Welfare Trust Fund provision states, in full:

> **Section 5.  Report of Contributions:** The Employers shall make all reports on Contributions as required by the Trustees in the performance of their duties under this Trust Agreement.  The Trustees may at any time designate an independent certified public accountant to conduct an audit of the payroll, wage, and any other records of any Employer to permit the Trustees to determine whether such Employer is making full payments to the Fund in the

amount required by the Collective Bargaining Agreement. Any audit authorized by the Trustees shall be for the sole purpose of making this determination. Any data or information obtained from the audit or furnished to the Trustees by the Employer or by the Union shall be held confidential, provided, however, that this information may always be disclosed to the Union and the Association. Otherwise, this information will not be disclosed to any third person, unless the Trustees shall decide that such disclosure is necessary for the proper administration of the Fund. When an audit of an Employer's records discloses Contributions due to the Fund which are ten percent (10%) or more of the total Contributions due to the Fund by the Employer audited for the period audited, the Employer shall also be obligated to pay the audit fee. Provided, that the Trustees, in their discretion, may also determine to charge the Employer with audit fees in other circumstances such as when an accounting is part of the relief sought in a lawsuit to collect Contributions.

Filing No. 30, Ex. 3 Health and Welfare Trust Fund agreement at 0056-7; see also Ex. 4 Local Pension Fund at 107-08. Based on this language and similar language in the other Fund agreements,[4] I find that the Trustees, in their sole discretion, have the right to charge an employer, such as Sadler Electric, with audit fees in circumstances other than when the difference between delinquent contributions and total contributions exceeds 10 percent, such as when, but not limited to when, an audit is a litigation expense.

There is nothing in the record that expressly states the reason the Trustees in this case decided to assess the audit expenses against Sadler, only that they considered the expense "in connection with the lawsuit brought against Sadler Electric, Inc. to collect

---

[4] Language contained in other trust agreements that the parties have agreed were incorporated into the CBA establish that the audit expense should be awarded to the Plaintiffs. For example, the Restated Employee Benefit Agreement for NEBF states at section 6.9: "In the event a Covered Employer has failed or fails to make required contributions, the Trustees are authorized and empowered . . .(6.9.1.) to impose on and receive from such Covered Employer all costs of any audit." The language in this agreement does not restrict the trustees' right to recover the audit costs.

9

delinquent contributions." (Filing No. 37, Robert J. Henry Aff. ¶3). DeBoer's audit report is dated November 17, 2005, this litigation was commenced on November 23, 2005; and I note that at least as of the date of Ronald Miller's affidavit, Sadler Electric still had not made other payments that are due under the CBA including the delinquent contributions, the liquidated damages, and the interest. (Filing No. 30, Miller Aff. ¶ 14). Even though the DeBoer audit was not prepared in response to this litigation, its expense is certainly part of the relief sought by Plaintiffs in this lawsuit to collect delinquent contributions. As such, it is clearly a recoverable expense under the Fund agreements as incorporated into the CBA.

## Conclusion

The Plaintiffs are entitled to summary judgment on all claims, including their claim for reimbursement of audit expenses in the amount of $6,242.00. Accordingly,

IT IS ORDERED:

1. Plaintiffs' Motion for Summary Judgment (Filing No. 28) is granted in all respects.
2. Plaintiffs may submit an application for attorney fees and costs pursuant to NECivR 54.1, 54.3 and 54.4.
3. A separate judgment shall be entered.

DATED this 25th day of September, 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge