IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LOCAL 22 INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 22 AND NATIONAL ELECTRICAL CONTRACTORS ASSOCIATION HEALTH AND WELFARE TRUST FUND, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 22 PENSION FUNDS A & B, OMAHA BROTHERHOOD OF ELECTRICAL WORKERS LOCAL NO. 22 VACATION-HOLIDAY TRUST FUND, OMAHA ELECTRICAL JOINT APPRENTICESHIP AND TRAINING TRUST FUND, IBEW LOCAL 22/NEBRASKA NECA LABOR MANAGEMENT COOPERATION COMMITTEE, NATIONAL ELECTRICAL BENEFIT FUND, NATIONAL LABOR-MANAGEMENT COOPERATION FUND, TRUSTEES OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 22/N.E.C.A. HEALTH AND WELFARE TRUST FUND, TRUSTEES OF THE INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 22 PENSION FUNDS A & B, TRUSTEES OF THE OMAHA BROTHERHOOD OF ELECTRICAL WORKERS LOCAL NO. 22 VACATION-HOLIDAY TRUST FUND, TRUSTEES OF THE OMAHA ELECTRICAL JOINT APPRENTICESHIP AND TRAINING TRUST FUND, and TRUSTEES OF THE NATIONAL ELECTRICAL BENEFIT FUND, <br><br>  Plaintiffs, <br><br> v. <br><br> SADLER ELECTRIC, INC., <br><br>  Defendant. | CASE NO. 8:05CV523 <br><br><br><br><br><br><br><br><br><br> MEMORANDUM AND ORDER <br> ON ATTORNEYS' FEE AWARD |

This matter is before the Court on the Plaintiffs' Application for an award of attorneys' fees, expenses and costs.[1]  Plaintiffs seek an award of fees and expenses in the amount of $43,401.94 pursuant to the Employment Retirement Income Security Act, specifically, 29 U.S.C. § 1132(g)(2).  (Filing No. 40).  Defendant Sadler Electric, Inc. opposes the application for fees and expenses on the basis that the amount requested by the Plaintiffs is not reasonable. (Filing No. 41, 42).

## Background of the Case

The parties agreed to resolve several of the outstanding issues in this case before the Court resolved the Plaintiffs' summary judgment motion.  Sadler Electric agreed that it was liable to the Plaintiffs for the following:

- $9,229.20 in delinquent contributions and dues;
- $1,008.92 in liquidated damages; and
- $2,722.67 in accrued interest.

The only substantive issue decided by the Court on the Plaintiffs' motion for summary judgment was whether Sadler Electric was required by contract to reimburse the Plaintiffs for the expenses in the amount of $6,242, related to the audit that revealed the delinquent contributions and dues.  Plaintiffs were invited to file an application for attorney fees.  Final judgment was entered in favor of the Plaintiffs in the amount of $19,202.79, which included the stipulated amounts and the audit expenses.

---

[1] Costs in the amount of $1,047.60 have been assessed.  (Filing No. 47).

**Attorneys' Fee**

Since 2002, the Court of Appeals for the Eighth Circuit has recognized that there is no presumption in favor of awarding attorney fees to a prevailing party in an ERISA case. In so doing, the Eighth Circuit Court distinguished the purpose of ERISA, protecting economic rights, from the purpose of the civil rights laws, protecting constitutional rights and favoring the award of attorney's fees under a private-attorney-general theory. *See Martin v. Arkansas Blue Cross & Blue Shield*, 299 F.3d 966, 972 (8th Cir. 2002) (en banc). The Eighth Circuit Court has stated that "a district court considering a motion for attorney's fees under ERISA should . . . apply its discretion consistent with the purposes of ERISA, those purposes being to protect employee rights and to secure effective access to federal courts." *Starr v. Metro Systems, Inc.,* 461 F.3d 1036, 1040 -1041 (8th Cir. 2006) citing *Welsh v. Burlington N., Inc., Employee Benefits Plan*, 54 F.3d 1331, 1342 (8th Cir. 1995).

In exercising its discretion, a trial court should consider the following factors:

(1) the degree of culpability or bad faith of the opposing party; (2) the ability of the opposing party to pay attorney fees; (3) whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances; (4) whether the parties requesting attorney fees sought to benefit all participants and beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Martin*, 299 F.3d at 969 & n. 4 (citing *Lawrence v. Westerhaus*, 749 F.2d 494, 495-96 (8th Cir.1984) (per curiam)). These factors are non-exclusive guidelines that should not be mechanically applied. *Id.* at 972; *Starr*, 461 F.3d at 1041.

ERISA's purpose is to protect "the interests of participants in employee benefit plans and their beneficiaries." 29 U.S.C. § 1001(b). I have considered the factors, and I

3

conclude that the purposes supporting ERISA will be served by an award of fees to the Plaintiffs. While I find no particular bad faith on the part of Sadler Electric, statements made by its president, Robert Sadler, in his deposition reflected an attitude of entrenchment regarding the litigation. I surmise that an award of attorneys fees against Sadler Electric in this instance may encourage it and other employers who are parties to these multi-employer plans to pay promptly any delinquencies that are discovered by regular audits. I find that the Plaintiffs' position on the merits was very strong, and that it appears that there was little, if any, genuine dispute that Sadler Electric owed the delinquent contributions to the plans. Moreover, it appears that Sadler Electric had the ability to pay the delinquencies months before the judgment was entered, and that the dispute relating to attorneys fees may have been the primary reason for the parties' inability to resolve the matter on their own. (Filing No. 45, Stapp and Henry Affidavits). There is no evidence that Sadler Electric is unable to pay an award. Clearly, the damages awarded to Plaintiffs will inure to the benefit of all participants and beneficiaries, and I observe that the vigilance with which the Plaintiffs sought enforcement of their rights supports the purpose of ERISA. For all these reasons, I conclude that the factors set forth in *Martin* and *Westerhaus* weigh in favor of awarding attorney fees in this case.

The law requires that the fees awarded be reasonable, and so I now consider the requested fee under the lodestar method. *See Brown v. Aventis Pharmaceuticals, Inc.*, 341 F.3d 822, 829 (8th Cir. 2003). The lodestar "is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rates." *Fish v. St. Cloud State University*, 295 F.3d 849, 851 (8th Cir. 2002). "When determining reasonable hourly rates,

district courts may rely on their own experience and knowledge of prevailing market rates." *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005) citation omitted.

The same attorneys from one law firm, Blake & Uhlig, P.A., located in Kansas City, Kansas, represented all the Plaintiffs. The Plaintiffs seek a total of $40,160.34 for their professional legal services (representing 229.51 attorney hours and 9.65 paralegal hours), and $3,246.07 in non-taxable expenses. The firm's statement for professional legal services, attached to the affidavit of lead counsel Michael Stapp (Filing No. 40, Affidavit of Michael Stapp, Ex. A, pp. 7-58), is actually six separate billing statements prepared for each one of the six Plaintiffs in the case. (*See, e.g.*, Stapp Aff., Exhibit A, for IBEW Local No. 22, pp. 7-9; NECA Pension Plan A, pp.10-16; NECA Pension Plan B, pp. 17-24; NECA Health and Welfare, pp. 24-30; IBEW Local 22 Apprentice, pp. 31-38; NEPF pp. 39-44 ). Stapp explains that the billing statements represent amounts that have been billed or will be billed to the Plaintiffs. He also explains that the attorneys' flat billing rate for the local union was set at a lower rate than the billing rate for the plans and funds, respectively $140 and $ 145 for the union compared to $175 and $180 for the plans and funds. (Stapp Aff. ¶ 6.)

The Defendant objects to the total number of hours recorded by Plaintiffs, 229.51 attorney hours and 9.65 paralegal hours, as excessive, duplicative, and redundant, and to the attorneys' hourly rates as too high. The Defendant objects to the lack of explanatory detail in some of the billing descriptions, and challenges the hourly rates as too high.

Plaintiffs' Application reflects its counsel's apparent decision to bill separately each client for the whole of the work performed in this matter (or nearly so), rather than to divide the time that counsel spent to achieve the Plaintiffs' common goal and bill only a portion

of that time to each Plaintiff.[2]  The law firm's approach may be permissible, but it results in redundant billing that I conclude should not be assessed against the Defendant.

In order to alleviate the unfair effect of this redundancy on the Defendant, I have considered each of the six separate billing statements.  The six separate billing statements are not identical, although most of entries on each statement duplicate entries on other statements.  I observe that nearly all of the entries made on the other five statements also are contained in the statement for NECA Pension Plan A.   The billing statement for the NECA Pension Plan A reflects the highest number of hours, billed and unbilled, recorded for any one of the six Plaintiffs at 66.35 hours.  (*Id.* pp. 10 -15).  I found fewer than five hours were contained on one or more of the other five billing statements that were not also included on the NECA Pension Plan A statement.  In an attempt to include all hours actually worked on behalf of any and all Plaintiffs by Blake & Uhlig legal professionals in the analysis, I will use the hours recorded on the NECA Pension Plan A statement, 66.35 plus five more hours, for a total of 71.35 hours, as representing the total number of hours spent in the prosecution of this matter.

I have considered the appropriateness of the delegation of the work by and between the litigation team members and find it appropriate.  The less experienced attorney performed the greatest percentage of the work under the supervision of the more experienced attorney.  I agree that the statements reflect more or longer attorney

---

[2] The Plaintiffs do not explain the law firm's billing methodology.  If it is the case that the individual billing statements do not reflect that the law firm billed each of its clients for the whole of the work performed, but rather, that the firm billed only a proportionate share of the whole to each client, then the fee is patently excessive and I would be reduced it to obtain the same result as is reached in this order.

conferences than would normally be expected for a case of this limited complexity, and it appears that some of that excessiveness may be due to the fact that Attorney Fletcher, a relatively inexperienced attorney, was performing most of the work under the supervision of Attorney Stapp. Thus, the attorney conference hours likely include some mentoring and training hours for which clients and opposing counsel should not be responsible. Because I have decided, as explained below, to uphold the blended hourly rate, I will reduce the hours reflected on the NECA Pension Plan A bill by 10 percent to reflect the excessive time spent by the attorneys in conference.

In response to Defendant's argument that the billing entries lack detailed descriptions, I found few entries lacking sufficient detail, and not enough of them to reduce the number of hours reasonably expended on that basis. I am not inclined to reduce further the number of hours reasonably expended based in part on the evidence provided by Plaintiffs that revealed the parties' substantial agreement on all issues, except attorney fees, months before the summary judgment motion was determined. Remarks made by Sadler Electric's president in the heat of litigation likely discouraged agreement on the attorney fee issue. For all these reasons, I conclude that the number of hours reasonably expended on the issues in this case is 64.25 (roughly 71.35, reduced by 10 percent for excessive attorney conferencing). [3]

---

[3] I expressly deny the Plaintiffs' request to supplement its request to include additional time spent in the preparation of the attorney fee application.

Having determined the number of hours reasonably expended, I turn to the reasonableness of the hourly rates. The case was handled primarily by two attorneys,[4] which appears to be appropriate and efficient staffing. Attorney Michael Stapp has been an attorney with Blake and Uhlig for 23 years, during which time he has handled dozens of matters relating to labor unions and employee benefit plans. He is identified as attorney number 9 on the billing statements. (Filing Nos. 40; and 45, Stapp Affidavit). Attorney Lauren Fletcher graduated from the University of Kansas Law School in 2005, and became a member of the Missouri Bar in 2006. She is identified as attorney number 12 on the billing statements. *(Id.*, Fletcher Affidavit). It appears that Fletcher performed much of the substantive litigation work under the supervision of Stapp, and that Stapp was primarily responsible for supervision and settlement negotiations. (Filing No. 40, Stapp Aff. Ex. A).

The billing statement for the NECA Pension Plan A reflects the higher of the two sets of blended hourly rates, which presumably were negotiated between the Plaintiffs and their counsel. (NECA Pension Plan A was billed at the flat rate of $175 and $180 depending on the year that the work was performed.) Defendant argues that the $175-$180 hourly rate is too high for a first year attorney working on an ERISA case in this District, and Defendant offers affidavit evidence demonstrating that the appropriate hourly rate for a first year associate in this District on these types of matters is between $120 and $135 per hour.

---

[4] Two other attorneys are identified in the motion and on the bills: Attorney Robert Henry has been admitted to practice law in Missouri and in Nebraska since 1994, and he has experience in these cases. He is identified as attorney no. 11. (Filing Nos. 40; and 45, Henry Aff. ¶ 2, 3). It appears that Henry was only slightly involved in the commencement of the case and in attorney conferences. Attorney Rebecca Proctor, admitted to the Missouri Bar in 2006, covered for Attorney Fletcher for a short time. Less than 10 hours of paralegal time was spent on the entire case.

As a general proposition, I would agree that an hourly rate of $175-180 is excessive for a first year associate. However, it is apparent that Blake & Uhlig and their clients in this case agreed to employ a blended hourly rate. A blended rate reflects an enhancement to the rate charged by less experienced lawyers and a corresponding reduction to the rate charged by more experienced lawyers. Because it would not be unusual to award an attorney with 23 years of experience in labor and ERISA cases an hourly rate in the range of $200-250 per hour, I conclude that a blended hourly rate of $180 for a litigation team composed of an attorney with a year's experience and an attorney with 23 years experience is reasonable. Further evidence of the reasonableness of this rate is that five of the six clients that Blake & Uhlig represented in this case agreed to pay the $180 blended rate. I find no reason to deviate from that rate.[5] I conclude that the blended rate of $180 is reasonable.

Under the lodestar method, I conclude that 64.25 hours[6] were reasonably expended and those should be multiplied by the $180 blended hourly rate for a reasonable attorney fee award of $11,565. I conclude that amount constitutes a reasonable attorneys' fee under the circumstances of this case.

**Non-taxable Expenses**

Expert witness Gene DeBoer spent 22.75 hours at a rate of $124 per hour (plus $16 for copying expenses) in preparation for this case, and charged plaintiffs expert witness fees in the amount of $2,837. Those expenses were incurred over a period from May

---

[5] The greatest percentage of the work performed in this case was performed during 2006, when the $180 blended rate applied, and so that it the rate I will use throughout.

[6] Approximately two hours recorded on the billing statement for NECA Pension Plan A are paralegal hours. Aware of the reduction I have taken in the hours reasonably expended, and mindful of the discretion properly exercised herein, I have multiplied all reasonable hours expended at the attorney blended rate, not the paralegal rate.

through August of 2006, and included the preparation of his expert witness report, correspondence with counsel, and the preparation of an affidavit. Because the recovery of the audit expenses was litigated to the end, and because there is no evidence that the Defendant paid the delinquent contributions before the entry of judgment, even though its liability for the delinquencies had been, at least informally, conceded, I will award the expert witness expenses requested.

The expenses claimed for photocopying and other document management tasks have not been adequately identified or distinguished from copying costs claimed in the bill of costs. Accordingly, they are denied. The food and lodging bill in the amount of $128.91 incurred on July 11, 2006, appears to have been incurred in connection with the July 12, 2006, deposition of Sadler Electric's president, which occurred in Lincoln, Nebraska. (Filing No. 30, Ex. 12; Filing No. 40; Holiday Inn Bill). I conclude that the deposition was necessarily taken in the prosecution of this matter, and that taking the deposition in Nebraska worked to Robert Sadler's benefit and convenience. Accordingly, I will include in the award the non-taxable expenses the food and lodging bill. The total non-taxable expenses awarded are $2,965.91.

IT IS ORDERED:

Plaintiffs' Application for Attorneys' Fees (Filing No. 40) is granted as follows: Defendant shall pay to the Plaintiffs $14,530.91, representing a reasonable attorney fee in the amount of $11,565, and non-taxable expenses in the amount of $2,965.91.

DATED this 5th day December, 2006.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge